Jennings, J.
This is an action in negligence to recover for injuries sustained by plaintiff Krikor Keikian (“Keikian”) as a passenger aboard the cruise ship Norwegian Sun, a vessel operated by defendant Norwegian Cruise Line Ltd. (“NCL”). The defendant filed a motion to dismiss on the ground, inter alia, that the action was not commenced in a Dade County, Florida court as required by the forum selection clause of Keikian’s passenger ticket contract. NCL’s dismissal motion was allowed, and Keikian filed this Dist./Mun. Cts. R. A. D. A., Rule 8C appeal.
The record indicates that after seeing an advertisement for a Caribbean cruise, Keikian telephoned NCL on October 23, 2001 to book passage on the Norwegian Sun. He alleges that prior to purchasing the tickets or making payment, he was informed by the telephone sales agent that the tickets were non-refundable. Keikian purchased two tickets anyway and charged them to his credit card. The cruise was round trip from Miami, Florida from December 29, 2001 to January 5, 2002 with stops in Honduras, Belize, Mexico and Grand Cayman Island.
Keikian received the cruise tickets and “Contract of Passage” by mail at his home on October 29, 2001, a full two months before the December 29, 2001 commencement of his cruise. Keikian does not contend that he questioned, objected to or even read the contract during this two month period, or that he ever attempted to cancel the cruise or obtain a refund on the basis of its provisions.
The NCL “Passenger Ticket Contract” issued to Keikian was a two-sided document measuring 14” x 8 1/2”, which was folded into four 3 1/2” x 8 1/2” sections. The top portion, captioned “Cruise Ticket,” had printing on only one side and was perforated to permit its detachment from the “Contract of Passage” by NCL personnel when it was presented by Keikian upon boarding. In the lower corner of *92 the Cruise Ticket was a block with a thick black border, a red background and white lettering which stated:
IMPORTANT NOTICE
The Passenger’s attention is specifically directed to the terms and conditions of this contract set forth below. These terms and conditions affect important legal rights and the passenger is advised to read them carefully.
Below the perforation was the passenger’s copy of the “Contract of Passage.” Immediately preceding the contract was a second block warning or notice to the passenger which was printed in red lettering against a white background with a black border. It stated:
Passengers are advised to read the terms and conditions of the Passenger Ticket Contract set forth below. Acceptance of this Passenger Ticket Contract by Passenger shall constitute the agreement of Passenger to these terms and conditions.
The “Contract of Passage” which followed consisted of 28 numbered clauses in small, but legible, print. Clause 1 stated, in pertinent part:
This passenger ticket contract (hereafter ‘Contraed) constitutes a contract of passage between the Carrier, Norwegian Cruise Line Limited d/b/ a Norwegian Cruise Line (hereafter referred to as ‘Carrier’), and the passenger or purchaser (whether or not signed by or on his behalf). All the terms and provisions of all sides of this Contract, including all of the following matter printed below, are a part of this Contract to which the passenger and/or purchaser, both on his/her behalf and on behalf of any other person or persons, including children, for whom this ticket is purchased, acknowledge and agree to be bound thereby by accepting this Contract or transportation from the Carrier.... This Contract shall be the entire agreement between the parties and supersedes all representations or conditions contained in Carrier’s advertisements, notices, brochures or other literature and all provisions and agreements made or claimed to have been made to or with the passenger or anyone representing him by any party.
Clause 28 of the Contract set forth the following choice of law and forum selection provisions:
This Contract shall be governed in all respects by the laws of the State of Florida and the laws of the United States of America. It is hereby agreed that any and all claims, disputes or controversies whatsoever arising from or in connection with this Contract and the transportation furnished hereunder shall be commenced, filed and litigated, if at all, before a court of proper jurisdiction located in Dade County, Florida, U.S.A.
Keikian and his wife boarded the Norwegian Sun and embarked on their cruise on December 29,2001. On January 2,2002, while the ship was at anchor off the coast of Belize, Keikian allegedly slipped on a wet tile in the ship’s pool area and suffered abrasions to his left wrist and knee and back pain. He did not file suit to recover for his alleged injuries in a Dade County, Florida court within one year of his injuries as required by the forum selection and limitations clauses of his passenger ticket contract. He commenced this action instead on December 31, 2002 in the Waltham District Court. As noted, the trial court allowed NCL’s motion to dismiss this action for lack of jurisdiction based on the forum selection clause in question.
*93 1. There is no merit in Keikian’s initial argument that he should not be bound by the forum selection or limitations clauses of the NCL passenger ticket because it is an “adhesion contract” which he never negotiated and to which he never assented.
It is established that the provisions of a passenger cruise ticket constitute a maritime contract, the validity and effect of which are determined by federal maritime law. Wallis v. Princess Cruises, Inc., 306 F.3d 827, 834 (9th Cir. 2002); Colby v. Norwegian Cruise Lines, Inc., 921 F. Supp. 86, 88 (D. Conn. 1996). Passenger cruise tickets are in fact recognized as a type of adhesion contract requiring any ambiguities therein to be construed against the carrier. Wallis v. Princess Cruises, Inc., supra at 838.
Common sense dictates that a ticket of this kind will be a form contract the terms of which are not subject to negotiation, and that an individual purchasing the ticket will not have bargaining parity with the cruise line.
Carnival Cruise Lines, Inc. v. Shute, 499 U.S. 585, 593 (1991). Most cruise tickets are routinely purchased by passengers without any prior discussion or review of ticket terms. Those facts alone do not, however, render the contract unenforceable. The test for determining whether the “fine print of adhesion contracts of passage” will be held binding on a plaintiff-passenger is whether the cruise ticket contract “reasonably communicates to the passenger the existence therein of important terms and conditions which affect legal rights.” Shankles v. Costa Armatori, S.P.A., 722 F.2d 861, 864 (1st Cir. 1983). The “reasonably communicated” test is two-prong and requires a court “to examine 1) the physical characteristics of the contract and 2) the circumstances surrounding the passengers’ purchase and retention of the contract.” Paredes v. Princess Cruises, Inc., 1 F. Supp. 2d 87, 89 (D. Mass. 1998). The question of whether a passenger contract satisfies this test is a question of law properly decided upon pretrial motion. Lousararian v. Royal Caribbean Corp., 951 F.2d 7, 9 (1st Cir. 1991); Shankles v. Costa Armatori, S.P.A., supra at 867.
2. The first prong of the test focuses not only on the “adequacy of the so-called ‘warning language’... directing a passenger to read the particular terms” of the ticket, Marek v. Marpan Two, Inc., 817 F.2d 242, 245 (3d Cir. 1987), but also on “the ticket terms themselves, and concerns such physical characteristics as the location of the terms within the ticket, the size of the typeface in which they are printed, and the simplicity of the language they employ.” Id. Prominently displayed on the face of the NCL ticket contract in this case are not one, but two conspicuous notices to the passenger to read carefully the terms and conditions that follow because they are important contract matters which affect his legal rights and are binding upon him. Those notices or “warnings” appear in eye-catching, thickly-bordered blocks with colored backgrounds and/or contrasting print which render them visually distinct from other ticket information. The 28 terms and conditions of the contract itself are printed immediately below the second warning and comprise the remainder of the ticket. Although set forth in fine print, they are readable and the terminology employed is comparatively clear and straightforward. The NCL ticket contract thus satisfied the first prong of the “reasonably communicated” test because the “language and appearance make the relevant provisions sufficiently obvious and understandable.” Lousararian v. Royal Caribbean Corp., supra at 8.
3. The circumstances surrounding Keikian’s purchase and retention of the ticket, the second prong of the “reasonably communicated” test, also favor enforcement of the terms of the passenger contract herein. Keikian’s complaint that he was never advised of the forum selection clause or any other contract term by the sales agent prior to ticket purchase overlooks the undisputed fact that the *94 passenger ticket contract was in his possession for two fall months prior to the commencement of his cruise. Pursuant to Clause 1, it was only at the point of embarkation, when Keikian “acceptfed] ... transportation from tire Carrier,” that he became bound by the terms of the passenger contract; and he had ample opportunity prior to that time to read it. A passenger in possession of a ticket contract for a reasonable period of time is "deemed to have notice of its terms,” Colby v. Norwegian Cruise Lines, Inc., supra, at 88, and the fact that he did not actually read the ticket is "not dispositive.” Paredes v. Princess Cruises, Inc., supra at 90.
Keikian argues that he had no incentive to read the contract because the telephone sales agent stated that the tickets were non-refundable. Stated alternatively, Keikian contends that because of his mistaken belief that he could not cancel the contract without forfeiting his ticket money, there was no point in apprising himself of the contract terms. The dispositive issue, however, is not whether Keikian had a sufficient or even rational reason for not reading the contract and thereby deliberately rejecting a reasonable opportunity to learn of its terms, including the forum selection clause. The issue is instead whether he in fact had such a reasonable opportunity in the two months preceding his cruise. He did. Inquiry under the "reasonably communicated” test into “‘the passenger’s possession and familiarity with the ticket’ does not depend upon actual knowledge of the terms in the contract of passage, but focuses instead on the opportunity for such knowledge [emphasis in original].” Lousararian v. Royal Caribbean Corp., supra at 11.
Moreover, Keikian does not argue that the sales agent directed or advised him not to examine the contract, actively discouraged him from reading it, or in any way suggested that the contract terms were not valid or not binding upon him.[1] Even a cursory glance by Keikian at the top portion of the ticket for no purpose other than to confirm that it bore his name would have revealed the first “IMPORTANT NOTICE” to him that contract terms affecting his legal rights were set forth below. Based on nothing more than the mere number of paragraphs which followed, common sense would have indicated that Keikian’s passenger contract with NCL was not defined by whatever verbal representations may have been made by a telephone sales agent.
4. As the terms and conditions of the NCL passenger ticket contract, including the forum selection clause, were “reasonably communicated” to Keikian, they became binding upon him when he accepted passage and boarded the Norwegian Sun for his NCL cruise. The remaining question is whether the forum selection clause should be enforced in this case.
Under federal maritime law, forum selection clauses in passenger ticket contracts are valid and generally given effect unless the clause is the product of “fraud or overreaching,” enforcement would “contravene a strong public policy of the forum in which suit is brought,” or enforcement would be “unreasonable or unjust.” Colby v. Norwegian Cruise Lines, Inc., supra at 88, quoting from Carnival Cruise Lines, Inc. v. Shute, supra at 594-596. There is no allegation of fraud or overreaching in this case. Second, forum selection clauses are recognized in Massachusetts as valid and enforceable unless it is unfair or unreasonable to do so. Jacobsen v. Mailboxes Etc. U.S.A., Inc., 419 Mass. 572, 575 (1995). The dispositive question, therefore, is whether Keikian has established that enforcement of the clause herein would be unreasonable and unjust because “trial in the contractual forum [Florida] will be so gravely difficult and inconvenient that he will for all *95 practical purposes be deprived of his day in court” The Bremen v. Zapata Off-Shore Co., 407 U.S. 1, 18 (1972).
Keikian argues only that he is 60 years old, self-employed and suffering from back pain. He does not elaborate on how these factors would have prevented him from filing suit in another state, particularly when he was physically and financially able to travel to that same state for vacation purposes only a short time earlier. On the basis of the record before us, Keikian has failed to satisfy the “‘heavy burden of proof required to set aside the [forum selection] clause on grounds of inconvenience.” Carnival Cruise Lines, Inc. v. Shute, supra at 595. See Effron v. Sun Line Cruises, Inc., 67 F.3d 7, 9-10 (2d Cir. 1995). Finally, contrary to Keikian’s remaining contention, the forum selection clause does not now become unenforceable simply because he has permitted the one-year statute of limitations governing a Florida suit to expire by improperly filing this action in Massachusetts first.
Appeal dismissed.
So ordered.

 Compare Wallis v. Princess Cruises, Inc., supra at 83, wherein the contract itself suggested that a liability limitation based upon an international convention was only potentially binding on a passenger and thus created a “disincentive ‘to study the provisions of the ticket’ [amounting to] an extrinsic factor impeding the passenger’s ability to become meaningfully informed.”